IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TAKIA LEWIS, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-23-43 |
| SENIOR LIFESTYLE, | * | |
| Defendant. | * | |

***

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant Senior Lifestyle's Motion to Dismiss (ECF No. 11). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2023). For the reasons set forth below, the Court will grant the Motion in part and deny it in part.

### I.   BACKGROUND

**A.   Factual Background**[1]

Self-represented Plaintiff Takia Lewis, a self-identified African American woman, began working for Senior Lifestyle in human resources in the Atrium Village on November 15, 2020. (Compl. at 9, ECF No. 1).[2] She alleges that Senior Lifestyle discriminated against her on the basis of race, and that she was fired in retaliation for her complaints of disparate treatment. (See id. at 7).

---

[1] Unless otherwise noted, the Court takes the following facts from the Complaint (ECF No. 1) and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).
[2] Citations to page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

On January 4, 2021, Todd Kalkstein, Senior Lifestyle's Kitchen Director, had a "rude[] outburst" at Lewis for delays in the onboarding process for new employees. (Id. at 9). He allegedly insulted Lewis by calling her slow. (Id.). On January 13, 2021, Lewis became aware that Kalkstein and Molly Hall, the Program Director, were "spreading [r]umors about employees being covid positive" and identifying those employees. (Id.). Lewis wrote them up because their actions violated the employee handbook and HIPPA. (Id.). After issuing the write up, Lewis was invited to a zoom call with Kalkstein; Hall; Beth Ber, the Vice President of Senior Lifestyle; and Denise Bucholz,[3] Lewis' supervisor. (Id.). Lewis was the only African American person on the call. (Id.). Ber raised her voice and told Lewis she was disrespectful and she should not have issued the write ups. (Id.). Bucholz later messaged Lewis to say that she agreed that Kalkstein and Hall were out of line but directed her to remove the write ups from Kalkstein and Hall's files. (Id.). Kalkstein then allegedly told another employee to not trust Lewis. (Id. at 10).

On February 2, 2021, Stacy Buckley[4] told Lewis to call employees to ask about their vaccination status, although Lewis had already done so the previous day. (Id.). When Lewis

---

[3] In her Opposition to the Motion to Dismiss, Lewis states that "the [p]roper defendant to this action is Senior Lifestyle, ('Denise Buchholz['])". (Pl.'s Mem. Supp. Resp. Mot. Dismiss ["Opp'n"] at 1, ECF No. 19). To the extent Lewis attempts to add Bucholz as a defendant, she did not file a motion to amend her Complaint, and she may not properly add a defendant in a responsive briefing. Regardless, Lewis asserts Title VII claims, and the only proper defendant in a Title VII case is the employer, Senior Lifestyle, not its individual employees. See Bradley v. Balt. Police Dep't, No. JKB-11-1799, 2012 WL 4321738, at *2 (D.Md. Sept. 19, 2012) ("Supervisors sued in their individual capacities may not be held liable under Title VII.") (citing Lissau v. S. Food Serv., Inc., 159 F.3d 177, 181 (4th Cir. 1998)).

[4] In the Complaint, Lewis refers to Buckley as "Stacy" and she only lists her full name in her Opposition. (See Opp'n at 2). While the Complaint must ordinarily stand alone,

informed her that she already made the calls, Buckley loudly said "do what I said now." (Id.). In a different meeting, Buckley "got smart" towards Lewis and said that as the boss, she ran the meetings. (Id.).

On February 3, 2021, Lewis and other employees moved their offices to a different floor. (Id.). Kalkstein helped white employees to set up their wifi and equipment, but he did not help Lewis. (Id.). On February 8, 2021, Kalkstein pushed past Lewis after a meeting without acknowledging her or excusing himself. (Id.). Lewis informed Buckley, who said she would handle it. (Id.). Lewis and other employees also observed Kalkstein digging into food meant for residents with his bare hands. (Id.). Lewis reported him to Buckley, but nothing was done about it. (Id.).

On February 13, 2021, Lewis received a complaint from an African American employee about her white supervisor. (Id. at 11). Buckley would not allow Lewis to attend a meeting with the employee after the complaint, and the situation was never addressed appropriately. (Id.). On February 17, 2021, Lewis learned that Senior Lifestyle held a management meeting but only invited white managers. (Id.).

On February 19, 2021, Kalkstein yelled at an African American supervisor, Helen Lambert, for working from home during a weather emergency. (Id.). Lewis reported this to Buckley and asked why Senior Lifestyle had not held Kalkstein accountable. (Id.). Buckley yelled at Lewis to "stay out of it." (Id.).

---

and the Court cannot permit Lewis to amend her Complaint with facts contained in the Opposition, the Court will refer to Buckley by her last name for consistency.

On February 22, 2021, Lewis heard Kalkstein "cussing at an employee," who told Lewis that Kalkstein had disrespected her and made her cry on previous occasions. (Id.). This situation was never handled. (Id.). On February 25, 2021, Lewis learned that an African American employee had quit because of Kalkstein and his disrespectful behavior and that a white server left her job because she did not want to take directions from Lambert, who is an African American woman. (Id. at 12). Lewis reported this information to Buckley, who told her to "stop supporting Black employees before [you] end up in the hot seat." (Id.). Lewis said that she did not understand, and Buckley replied "oh[,] you will." (Id.). Lewis told her that she needed to treat all employees equally. (Id.).

On March 2, 2021, Lambert told Lewis that Kalkstein sent a text to a group chat of Senior Lifestyle employees in which he blamed Lambert for a mistake that a white employee had made. (Id.). Lewis submitted a statement to Buckley, who told Lambert that she was Kalkstein's boss and to "stop putting energy in the situation." (Id.). That same day, Buckley told Lewis that her position was being eliminated and that her last day of work would be March 16, 2021. (Id.).

On March 3 and 4, 2021, after Lewis had gone home, Kalkstein and Buckley broke into her office and took her office keys and several write ups, including the one she wrote for Kalkstein and Hall. (Id. at 13). From March 5–16, 2021, Lewis was denied access to payroll, and she was told to sit at her desk all day and not speak to employees. (Id.).

**B.   Procedural History**

Lewis filed an administrative complaint on March 2, 2021, and she received a Right to Sue Letter on October 11, 2022. (See id. at 8). On January 9, 2023, she filed her

4

Complaint, in which she claims racial discrimination and retaliation under Title VII. (Id. at 7). Senior Lifestyle filed the instant Motion to Dismiss on May 16, 2023. (ECF No. 11). Lewis filed an Opposition on June 12, 2023, (ECF No. 19), and Senior Lifestyle filed a Reply on June 26, 2023, (ECF No. 21).

## II. DISCUSSION

### A. Standard of Review

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs, 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). Complaints drafted by self-represented plaintiffs are held to a less stringent standard than those drafted by attorneys, and courts must liberally construe these complaints. See Johnson v. Silver, 742 F.2d 823, 825 (4th Cir. 1984). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

**C.    Analysis**

    **1.    Discrimination**

Senior Lifestyle argues Lewis has failed to state a plausible claim for discrimination due to her race or color. (Def.'s Mem. Supp. Mot. Dismiss ["Mot."] at 1, ECF No. 11-2). Title VII prohibits an employer from discriminating against employees due to race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a). A plaintiff may establish a Title VII claim "either 'through direct and indirect evidence of retaliatory [or discriminatory] animus,' or through a burden-shifting 'pretext' framework." Netter v. Barnes, 908 F.3d 932, 938 (4th Cir. 2018) (quoting Foster v. Univ. of Md.-E. Shore, 787 F.3d 243, 249 (4th Cir. 2015)).

The Complaint does not include allegations of direct evidence of discrimination. See Cole v. Fam. Dollar Stores of Md., Inc., 811 F.App'x 168, 175 (4th Cir. 2020) ("Direct

6

evidence is 'evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision.'" (quoting Taylor v. Va. Union Univ., 193 F.3d 219, 232 (4th Cir. 1999))).[5] Accordingly, the Court will evaluate Lewis' claim under the burden-shifting framework first articulated by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

To establish a discrimination or retaliation claim under the McDonnell Douglas burden-shifting framework, Lewis must eventually put forth a prima facie case by establishing that:

> (1) she belongs to a protected class;
> (2) she suffered an adverse employment action;
> (3) at the time of the adverse action, she was performing her job at a level that met her employer's legitimate expectations . . . ; and
> (4) she was rejected [or terminated] under circumstances giving rise to an inference of unlawful discrimination.

See Adams v. Trs. of the Univ. of N.C.-Wilmington, 640 F.3d 550, 558 (4th Cir. 2011). The precise formulation of the required prima facie showing will vary in "differing factual situations," McDonnell Douglas, 411 U.S. at 802 n.13, and the elements were "never intended to be rigid, mechanized, or ritualistic,'" Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002) (quoting Furnco Constr. Corp. v. Waters, 438 U.S. 567, 577 (1978)). If Lewis succeeds in establishing a prima facie case, the burden shifts to the employer to

---

[5] In her Complaint, Lewis alleges that Senior Lifestyle discriminated against her directly by excluding her from meetings and taking away job responsibilities. (Compl. at 5). The Court finds that these actions could show indirect discrimination in some circumstances, but alone they do not evince a "discriminatory attitude" towards Lewis based on her race. See Cole, 811 F.App'x at 175. Thus, the Court finds that Lewis presents no evidence of direct discrimination.

"present a legitimate, non-discriminatory reason for its employment action." Mackey v. Shalala, 360 F.3d 463, 468 (4th Cir. 2004). If the employer does so, "the burden shifts back to the employee to show that the given reason was just a pretext for discrimination." Id.

The Court is mindful that a Title VII plaintiff need not satisfy all the elements set forth above to survive a motion to dismiss. See Swierkiewicz, 534 U.S. at 510 ("The prima facie case under McDonnell Douglas, however, is an evidentiary standard, not a pleading requirement."); accord Parker v. Child.'s Nat'l Med. Ctr., Inc., No. ELH-20-3523, 2021 WL 5840949, at *9 (D.Md. Dec. 9, 2021) ("At the motion to dismiss stage, a plaintiff need not establish a prima facie case of discrimination."). Instead, at the motion to dismiss stage, a plaintiff need only "allege[] facts that plausibly state a violation of Title VII 'above a speculative level.'" Bing v. Brivo Sys., LLC, 959 F.3d 605, 617 (4th Cir. 2020) (quoting Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010)), cert. denied, 141 S.Ct. 1376 (2021). Thus, the plaintiff must generally show that the employer took adverse action against the plaintiff "under circumstances which give rise to an inference of unlawful discrimination." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981); Adams, 640 F.3d at 558. This requirement can be met by showing that "similarly-situated employees outside the protected class received more favorable treatment." White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004).

The Court considers the "totality of the circumstances" in determining whether Lewis has adequately alleged discrimination. See Strothers v. City of Laurel, 895 F.3d 317, 330–31 (4th Cir. 2018) ("[T]he connection between animus and conduct may be inferred from the totality of the circumstances."); see also Woods v. City of Greensboro, 855 F.3d

639, 649 (4th Cir. 2017) (concluding that a court "may infer discriminatory intent from evidence of a general pattern of . . . discrimination in the practices of a defendant"); Guirkin v. CMH Physician Servs., LLC, No. 3:20CV59, 2020 WL 6829769, at *7 n.13 (E.D.Va. Nov. 20, 2020) ("Although [plaintiff's] individual allegations do not by themselves prove discriminatory animus, the totality of circumstances surrounding his termination gives rise to the inference that [plaintiff] was fired, at least in part, because of his [protected status].").

Senior Lifestyle argues that Lewis' allegations do not support a reasonable inference that she was terminated due to unlawful discrimination. (See Mot. at 6). The Court agrees. Lewis alleges that managers treated her with hostility, excluded her from meetings, took away job responsibilities, belittled her, and ignored her efforts to resolve employee complaints. (See Compl. at 5–13). Even taking these allegations as true and construing them in the light most favorable to Lewis, the Court cannot infer that Senior Lifestyle acted with discriminatory animus due to Lewis' race or color.

Lewis argues that she has stated a claim for discrimination by showing Senior Lifestyle's disparate treatment of employees outside her protected class. (See Opp'n at 4). Specifically, Lewis alleges that Kalkstein helped other white employees to set up their offices and equipment, but that he did not help her. (Compl. at 10).

To the extent they intend to rely on comparator evidence, plaintiffs in the Fourth Circuit must demonstrate that they are similarly situated with a comparator "by showing that they both (1) 'dealt with the same supervisor,' and (2) were 'subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating

9

circumstances that would distinguish their conduct or the employer's treatment of them for it.'" Tinsley v. City of Charlotte, 854 F.App'x 495, 500–01 (4th Cir. 2021) (quoting Haynes v. Waste Connections, Inc., 922 F.3d 219, 223–24 (4th Cir. 2019)). This Court has previously dismissed Title VII complaints in which the only allegations of discriminatory intent come from insufficient comparator evidence. See Chatelle v. Maryland, No. GLR-21-1734, 2022 WL 2953042, at *8 (D.Md. July 25, 2022) (dismissing complaint when comparator evidence fails to establish discriminatory intent or causation); Price v. Howard Cnty. Pub. Sch. Sys., No. GLR-22-541, 2023 WL 170425, at *10 (D.Md. Jan. 11, 2023) (same).

Here, Lewis has failed to show either of the two elements set forth above, and thus she cannot state a claim for discrimination based on comparator evidence. Accordingly, Lewis' discrimination claim will be dismissed.

### 2. Retaliation

Lewis alleges that Senior Lifestyle terminated her in retaliation for her advocacy regarding African American employees and discrimination in the workplace. (Compl. at 11–13). Specifically, Lewis reported several different employee complaints to Buckley between February 13, 2021 and March 2, 2021:

- On February 13, 2021, Lewis reported a concern from an African American employee regarding their white supervisor, (id. at 11);

- On February 18 and 19, 2021, Lewis reported that Kalkstein yelled at and demeaned Lambert, an African American employee. Buckley told Lewis to "stay out of it," (id.);

- On February 22, 2021, Lewis reported that Kalkstein had cursed at an employee, (id.);

- On February 25, 2021, Lewis reported that a Black employee had quit because Kalkstein and another supervisor had demeaned her with "slurs" and asked her if she could read. She also told Buckley that a former white employee quit because she did not want to take direction from an African American supervisor. In response, Buckley told her "stop supporting Black employees before [you] end up in the hot seat." Lewis said that she did not understand, and Buckley replied "oh[,] you will." Lewis informed her that "you need to treat all your employees the same," (id. at 12);

- On March 1, 2021, Lewis reported that Kalkstein assumed that Lambert, an African American supervisor, made a mistake, and he reprimanded her on a group text, even though a white supervisor made the mistake, (id.).

Also on March 2, 2021, Buckley informed Lewis that her position was being eliminated, and Lewis' last day would be March 16, 2021. (Id.). On March 5, 2021, management confined Lewis to her desk and would not allow her to access payroll or to answer employee questions. (Id. at 13).

Senior Lifestyle argues the retaliation claim must be dismissed because Lewis did not engage in protected activity and even if she did, there is no causal connection between the activity and her termination. (Mot. at 7–8). At bottom, the Court finds Lewis has alleged sufficient facts to plead a prima facie case of retaliation.

Title VII prohibits an employer from retaliating against an employee who exercises her Title VII rights. Hart v. Lew, 973 F.Supp.2d 561, 582 (D.Md. 2013). In order to establish a prima facie claim of retaliation under Title VII, Lewis "must show that she engaged in protected activity, that her employer took adverse action against her, and that a causal relationship existed between the protected activity and the adverse employment activity." Id. (cleaned up). If she succeeds in establishing a prima facie case, the McDonnell Douglas framework applies, just as it does for a discrimination claim: "If a plaintiff puts

11

forth sufficient evidence to establish a prima facie case of retaliation and a defendant offers a non-discriminatory explanation for the adverse action, the plaintiff bears the burden of establishing that the employer's proffered explanation is pretext." Id. (cleaned up).

Regarding the first element, Title VII makes it unlawful for "an employer to discriminate against any of [its] employees . . . because [s]he has opposed any practice made an unlawful practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). Protected activity, "therefore, can take the form of either opposing a practice prohibited under Title VII ([under] the opposition clause) or making a charge, testifying, assisting, or participating in an investigation, proceeding, or hearing under Title VII ([under] the participation clause)." Pitter v. Cmty. Imaging Partners, Inc., 735 F.Supp.2d 379, 395 (D.Md. 2010). "The opposition clause has been held to encompass informal protests, such as voicing complaints to employers or using an employer's grievance procedures." Id. at 396.

Senior Lifestyle argues that Lewis' reports to Buckley do not constitute protected activity because "there are no facts to suggest that Mr. Kalkstein's behavior was in any way discriminatory or on the basis of a protected characteristic." (Reply Supp. Def.'s Mot. Dismiss ["Reply"] at 4, ECF No. 21). The Court agrees that some of Lewis' reports, such as the February 13, 2021 report of a concern regarding a white director and an African American employee, are too vague and do not indicate any discriminatory animus. Nevertheless, the Court must consider the totality of the circumstances and view the facts in the light most favorable to Lewis. Albright, 510 U.S. at 268. In doing so, the Court finds

that Lewis reported a pattern of Kalkstein singling out African American employees for discipline.

The Court further finds that even if these reports were, by themselves, insufficient to show protected activity, Lewis' conversation with Buckley on February 25, 2021, establishes the first element of her claim. In that conversation, Buckley told Lewis to "stop supporting Black employees," indicating that Lewis' reports were based upon a protected characteristic. (Compl. at 12). Further, when Lewis told her that she did not understand, Buckley said "oh[,] you will," and Lewis informed her that "you need to treat all your employees the same." (Id.). Lewis' plea that Buckley "treat all [] employees the same" can be construed as a request for Senior Lifestyle to address alleged discriminatory conduct. Because protected activity "encompass[es] informal protests, such as voicing complaints to employers or using an employer's grievance procedures," Pitter, 735 F.Supp.2d at 396, the Court finds that Lewis participated in protected activity.

Senior Lifestyle does not contest that it took an adverse action against Lewis, and thus the Court moves to the third element—whether a causal relationship existed between the protected activity and the adverse employment activity. To satisfy this element, a plaintiff must show that "the employer [took] the adverse employment action because the plaintiff engaged in a protected activity." Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir.1998) (emphasis in original). The Fourth Circuit "has held that evidence that the alleged adverse action occurred shortly after the employer became aware of the protected activity is sufficient to 'satisf[y] the less onerous burden of making a prima facie case of causa[tion].'" Id. (quoting Williams v. Cerberonics,

13

Inc., 871 F.2d 452, 457 (4th Cir.1989)) (emphasis and alterations in Dowe). Conversely, "the opposite [is] equally true," so that "[a] lengthy time lapse between the employer becoming aware of the protected activity and the alleged adverse employment action . . . negates any inference that a causal connection exists between the two." Dowe, 145 F.3d at 657 (finding a period of time exceeding three years too lengthy to give rise to the inference of a causal connection); Clarke v. DynCorp Int'l LLC, 962 F.Supp.2d 781, 790 (D.Md. 2013) ("[A] lapse of as little as two months between the protected activity and an adverse employment action is sufficiently long so as to weaken significantly the inference of causation.") (citation omitted); Pascual v. Lowe's Home Centers, Inc., 193 F.App'x 229, 233 (4th Cir. 2006) (two to four month period between protected activity and termination was "too long to establish a causal connection by temporal proximity alone.").

Lewis is a self-represented litigant, and she does not directly discuss causation in her Opposition or Complaint. Regardless, plaintiffs are not required to plead a formulaic recitation of the elements, see E.E.O.C. v. Performance Food Grp., Inc., 16 F.Supp.3d 584, 588 (D.Md. 2014), and the Court finds that her alleged timeline establishes causation by temporal proximity. Lewis participated in protected activity on February 25, 2021 when she made a report of racial discrimination to Buckley and asked that Buckley "treat all [] employees the same." (Compl. at 12). Buckley told her to stop advocating for Black employees, and when Lewis said she did not understand, Buckley said "oh[,] you will." (Id.). Just five days later on March 2, 2021, Buckley told Lewis that her position was being eliminated. (Id.). On March 5, 2021, Senior Lifestyle took away key job responsibilities, and Lewis' last day was March 16, 2021. (Id. at 13). Accordingly, Lewis has established

causation because the adverse action occurred "shortly" after Senior Lifestyle became aware of the protected activity. See Dowe, 145 F.3d at 657.

Lewis has plead of prima facie case of retaliation because she has established all three elements. See Hart, 973 F.Supp.2d at 582. Under the McDonnell-Douglas framework, the burden then shifts to Senior Lifestyle to offer a non-discriminatory explanation for the adverse action. See id. Senior Lifestyle offers no explanation for why it eliminated Lewis' position and took away key job responsibilities, and thus its Motion will be denied as to the retaliation claim.

### III.    CONCLUSION

For the foregoing reasons, the Court will grant the Motion to Dismiss in part and deny it in part. (ECF No. 11). The Motion will be granted as to the discrimination claim and denied as to the retaliation claim. Senior Lifestyle will answer the Complaint as required by the Federal Rules of Civil Procedure and the Local Rules of this Court. A separate Order follows.

Entered this 7th day of December, 2023.

/s/
George L. Russell, III
United States District Judge